# United States Court of Appeals for the Federal Circuit

2008-3267

RICKEY D. CARROW,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF VETERANS AFFAIRS,

Intervenor.

Rickey D. Carrow, of Pinetown, North Carolina, pro se.

Joyce G. Friedman, Acting Associate General Counsel, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With her on the brief was B. Chad Bungard, General Counsel.

Scott T. Palmer, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for intervenor. With him on the brief were Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3267

RICKEY D. CARROW,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent,

and

DEPARTMENT OF VETERANS AFFAIRS,

Intervenor.

Petition for review of the Merit Systems Protection Board
in DC3443070780-I-1.

_____

DECIDED:  May 1, 2009

_____

Before BRYSON, LINN, and PROST, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

Rickey D. Carrow petitions for review of a decision of the Merit Systems Protection Board dismissing his appeal for lack of jurisdiction.  We vacate and remand for further proceedings.

I

Mr. Carrow entered the federal competitive service as an orthotist for the Department of the Army in September 2001.  After five years of continuous service with

the Army, he applied for an orthotist-prosthetist position that had been advertised by the Department of Veterans Affairs ("DVA"). The vacancy announcement specified the terms and conditions of employment, including, inter alia, that the position was excepted from the competitive service under Title 38 and was subject to the completion of a probationary period. The DVA appointed Mr. Carrow to the advertised position on February 4, 2007, without a break from his prior service. Subsequently, the Army and the DVA each issued a Notification of Personnel Action, Standard Form 50 ("SF-50") to reflect the change in Mr. Carrow's employment status. The Army's SF-50 characterized Mr. Carrow's appointment to the DVA as a "transfer." In contrast, the DVA's SF-50 stated that Mr. Carrow had been "converted" to the excepted service and appointed to a temporary, full-time position pursuant to 38 U.S.C. § 7405(a)(1). The DVA's SF-50 also stated that Mr. Carrow's employment status would remain "indefinite," or "temporary," pending certification by the Orthotist-Prosthetist Professional Standards Board. On June 8, 2007, four months after his appointment, Mr. Carrow was terminated for "unacceptable performance issues."

Mr. Carrow appealed the removal decision to the Merit Systems Protection Board, claiming that the DVA had denied him the procedural protections afforded to permanent, full-time employees in the competitive service. See, e.g., 5 U.S.C. § 7513. The administrative judge who was assigned to the case directed Mr. Carrow to submit evidence showing that the Board had jurisdiction to entertain the appeal. In his response, Mr. Carrow asserted that he had not knowingly surrendered the civil service rights he had earned in his previous position with the Army. Because his appointment had been described as a "transfer," Mr. Carrow argued that he should have retained his

status as a competitive service employee and received credit for having completed a probationary period in connection with his prior service. Mr. Carrow also contended that he was not informed of the board certification requirement that was described in the DVA's SF-50. The DVA responded that Mr. Carrow had been apprised of the terms and conditions of his appointment both by the vacancy announcement itself and by the various DVA personnel who had shepherded him through the hiring process.

The administrative judge held a hearing to resolve the parties' dispute as to Mr. Carrow's employment status at the time of his removal. At that hearing, Mr. Carrow testified that Larry James, the Human Resources Specialist responsible for recruiting candidates for the vacancy, had characterized his appointment as a "transfer" from the Army to the DVA. Although Mr. Carrow acknowledged that he had reviewed the vacancy announcement before applying to the DVA, he argued that the DVA was required by its internal policies to inform him of the specific consequences of accepting the advertised position. Mr. Carrow introduced into evidence the DVA's Human Resources Management Letter No. 05-04-02, dated March 4, 2004, which provided "interim guidance and instructions" for implementing the Veterans Health Care, Capital Asset, and Business Improvement Act of 2003, Pub. L. No. 108-170, §§ 301-304, 117 Stat. 2042, 2054-60. One of the changes effected by that statute was the expansion of the "hybrid" Title 38 personnel system to include several classes of employees that had previously been in the competitive service, including orthotist-prosthetists. The Human Resources Management Letter instructed DVA officials to notify "converted" employees of the newly applicable regulations and policies and of any changes in their civil service rights under the competitive service system. Mr. James testified that the notice

requirement was still in effect when Mr. Carrow was hired and that the DVA's failure to afford Mr. Carrow such notice, if it occurred, was an oversight.

Mr. Carrow also stated that the DVA had failed to advise him that his appointment would be temporary pending the outcome of the board certification process. Mr. Carrow's testimony was controverted by Mr. James, who stated that he had discussed the position with Mr. Carrow on several occasions and on at least one occasion had told Mr. Carrow the appointment would be temporary until the board certification process was completed. The administrative judge also received a statement from Kurt Keeton, a DVA supervisor who interviewed Mr. Carrow. Mr. Keeton stated that in January 2007 he had a telephone conversation with Mr. Carrow in which he "explained . . . that all new employees who are Orthotists in the VA need to be boarded" prior to their arrival. Since Mr. Carrow had indicated that he was anxious to start immediately, Mr. Keeton arranged for "a temporary appointment until the boarding action was complete" and then "let Mr. Carrow know this information."

Following the hearing, the administrative judge concluded that Mr. Carrow had failed to establish that the Board had jurisdiction over his appeal. The principal ground for the administrative judge's decision was that Mr. Carrow had voluntarily accepted a temporary appointment under 38 U.S.C. § 7405(a)(1). Because that provision allows the DVA to appoint certain health care professionals "without regard to civil service or classification laws, rules, or regulations," the administrative judge concluded that Mr. Carrow had forfeited any appeal rights he had in his previous position with the Army. In the alternative, the administrative judge held that Mr. Carrow was ineligible for appellate rights under 5 U.S.C. § 7511. Because Mr. Carrow was a temporary, probationary, and

nonpreference eligible employee in the excepted service, the administrative judge found that he could qualify for the right to appeal to the Board, if at all, only under 5 U.S.C. § 7511(a)(1)(C)(ii). With respect to that provision, however, the administrative judge ruled that Mr. Carrow could not satisfy the requirement of two years of current, continuous service "in an Executive agency," because he had not completed two years of service within the DVA. In the administrative judge's view, Mr. Carrow was precluded from tacking on his prior service in the Department of the Army because the statutory two years of service were required to be performed in the same Executive agency.

After the full Board denied a petition for review, Mr. Carrow petitioned for review by this court.

II

We first review the administrative judge's finding that Mr. Carrow voluntarily accepted a temporary appointment under 38 U.S.C. § 7405(a)(1). We then address the administrative judge's legal conclusion that by accepting that temporary appointment, Mr. Carrow surrendered his right to challenge his removal before the Board.

A

The administrative judge first directed her attention to the type of appointment that Mr. Carrow held within the DVA. The vacancy announcement described the open position as a Title 38 excepted service position that was subject to a probationary period. The DVA's SF-50 stated that Mr. Carrow was employed pursuant to 38 U.S.C. § 7405(a)(1). That citation confirmed that the position was in the excepted service, and the SF-50 explicitly stated that Mr. Carrow's tenure status was "indefinite," or temporary, pending board certification. Although the vacancy announcement stated that

professional certification was "not required," the administrative judge reasonably credited the testimony of Messrs. James and Keeton that certification was a condition of Mr. Carrow's employment. Despite the contrary evidence in the record suggesting that Mr. Carrow was "transferred" from his previous competitive service position within the Army, we hold that the administrative judge correctly characterized Mr. Carrow as a probationary employee who had been appointed pursuant to 38 U.S.C. § 7405(a)(1).

The administrative judge then addressed Mr. Carrow's contention that he was not on notice that he would be surrendering his appeal rights if he accepted the advertised position with the DVA. Since the parties are in agreement that it would have been sufficient for Mr. Carrow to be alerted to the material terms of his employment, we need not decide the precise contours of the notice requirement for an individual in Mr. Carrow's circumstances. See generally Park v. Dep't of Health & Human Servs., 78 M.S.P.R. 527, 534 (1998); Covington v. Dep't of Health & Human Servs., 750 F.2d 937, 943 (Fed. Cir. 1984). The DVA's vacancy announcement expressly stated that the position being advertised was both excepted from the competitive service and subject to a probationary period. Moreover, the administrative judge permissibly rejected Mr. Carrow's account of the facts in favor of the DVA officials' testimony that he was put on notice of his temporary status. Accordingly, we reject Mr. Carrow's contention that he was not adequately apprised of the relevant terms and conditions of his appointment within the DVA.

Finally, the administrative judge addressed Mr. Carrow's assertion that the DVA failed to comply with an internal policy directing DVA officials to notify newly hired employees of the consequences of being appointed to a "hybrid" position under 38

2008-3267                                             6

U.S.C. § 7405(a)(1). The DVA's "interim guidance and instructions" for implementing the 2003 amendments to Title 38 required detailed notices to be sent to current employees who were "converted" to the excepted service. Mr. Carrow, however, was not a "converted" employee within the meaning of the DVA's internal policy because he did not fall within the category of "current VA employees in new hybrid occupations." Rather, as Mr. James testified, Mr. Carrow's appointment was made under the authority for "new appointments in the new hybrid occupations." The DVA's "new appointment" procedures required only notice that the employee had accepted a position within the excepted service. Accordingly, even assuming that the DVA failed to send Mr. Carrow a notice letter in accordance with its "interim guidance and instructions," there is no reason to believe the letter would have included any details that were not provided in the vacancy announcement (which Mr. Carrow acknowledged having read and understood). We therefore agree with the administrative judge that Mr. Carrow failed to demonstrate any prejudice from the DVA's failure to follow its own internal notice procedures. The record thus supports the administrative judge's conclusion that Mr. Carrow knowingly accepted a temporary appointment under 38 U.S.C. § 7405(a)(1).

B

The administrative judge erred, however, in ruling that Mr. Carrow's appointment under section 7405(a)(1) automatically excluded him from coverage under the civil service laws governing appeals from adverse employment actions. Although Congress has generally provided that individuals appointed under section 7405(a)(1) shall be excluded from the civil service protections available to federal employees, there is a limited exception to that rule for health care professionals who are appointed to

positions listed in section 7401(3). See 38 U.S.C. §§ 7405(a)(1)(B), 7403(f)(3); see also 5 U.S.C. § 7511(b)(10). For those individuals, "all matters relating to adverse actions . . . shall be resolved under the provisions of Title 5 as though such individuals had been appointed under that title." 38 U.S.C. § 7403(f)(3). Because Mr. Carrow was employed by the DVA as an orthotist-prosthetist, a position listed in section 7401(3), the administrative judge could not dismiss the appeal solely on the basis of the finding that Mr. Carrow was appointed under section 7405(a)(1). Cf. Bonner v. Dep't of Veterans Affairs Pittsburgh Healthcare Sys., 477 F.3d 1343, 1346-47 (Fed. Cir. 2007) (discussing appeal rights of DVA employees under section 7401(3)); Khan v. United States, 201 F.3d 1375, 1380-81 (Fed. Cir. 2000) (same). The administrative judge was therefore required to proceed with the jurisdictional analysis on the assumption that Mr. Carrow had been temporarily appointed to an excepted service position under Title 5.

III

We next turn to the administrative judge's alternative holding that the Board would lack jurisdiction even if Mr. Carrow's appointment were analyzed under Title 5. Mr. Carrow concedes that if we were to uphold the administrative judge's determination that he was temporarily employed pursuant to 38 U.S.C. § 7405(a)(1), he could qualify as a Title 5 "employee" only under section 7511(a)(1)(C)(ii). That provision requires Mr. Carrow to establish that he had completed at least two years of "current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less." The administrative judge interpreted the term "an Executive agency" to require that the two years of continuous service be within the same agency. Mr. Carrow did not qualify for the right to challenge his

2008-3267                                        8

dismissal under the administrative judge's interpretation of section 7511(a)(1)(C)(ii) because his prior service with the Army could not be tacked on to his four months of current service with the DVA.  Thus, the alternative ground for dismissing Mr. Carrow's appeal turns on whether the administrative judge properly construed the term "an Executive agency."

The Office of Personnel Management ("OPM") is entrusted with administering the statutory provisions governing the rights of federal employees to appeal adverse agency actions to the Board.  See 5 U.S.C. § 7514 (granting OPM the authority to "prescribe regulations to carry out the purpose of" subchapter II of chapter 75 of title 5); see also 5 U.S.C. §§ 7511(c), 7513(a).  Accordingly, we are obligated to give controlling effect to OPM's interpretation of the term "an Executive agency" if that interpretation is reasonable and not contrary to the unambiguously expressed intent of Congress.  See Entergy Corp. v. Riverkeeper, Inc., No. 07-588, slip op. 7 (U.S. Apr. 1, 2009) (agency's interpretation of statutory term "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation nor even the interpretation deemed most reasonable by the courts"); Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984); see also Van Wersch v. Dep't of Health & Human Servs., 197 F.3d 1144, 1151 n.7 (Fed. Cir. 1999).

Acting pursuant to its delegated authority under 5 U.S.C. § 7514, OPM has promulgated implementing regulations that provide Board appeal rights to any individual "in the excepted service who is a nonpreference eligible in an Executive agency as defined at Section 105 of title, 5, United States Code, and who has completed 2 years of current continuous service in the same or similar positions under other than a

temporary appointment limited to 2 years or less." 5 C.F.R. § 752.401(c)(5) (2007). In the notice of proposed rulemaking for those regulations, OPM stated that "the statute allows employees credit for service from more than one agency . . . ." 58 Fed. Reg. 13,191, 13,193 (Mar. 10, 1993). That understanding of the two-year service requirement is consistent with the text of the regulation, which requires the "current continuous service" to be performed "in the same or similar positions," but does not require that the positions be within the same agency.

OPM's interpretation of section 7511(a)(1)(C)(ii) governs because it constitutes a reasonable resolution of an issue on which Congress has not clearly spoken. The context of the statutory term "an Executive agency" does not suggest any reason to depart from the default rule of statutory construction that words importing the singular include the plural meaning. See 1 U.S.C. § 1; see also 2A Singer, Statutes and Statutory Construction § 47:34 (6th ed. 2000) ("It is most often ruled that a term introduced by 'a' or 'an' applies to multiple subjects or objects unless there is reason to find that singular application was intended or is reasonably understood."). The legislative history of section 7511 likewise suggests that the right to challenge employment actions was not intended to turn on the employee's tenure within a particular agency. Nonpreference eligible employees were extended civil service protections in 1990, following the enactment of the Civil Service Due Process Amendments, Pub. L. No. 101-376, § 2, 104 Stat. 461. The stated purpose of that legislation was to provide "certain employees in the excepted service who are not preference eligibles the same administrative notice and appeal procedures currently provided employees in the competitive service and preference eligible employees in the

excepted service." H.R. Rep. No. 101-328, at 1 (1990), as reprinted in 1990 U.S.C.C.A.N. 695. Under the pre-existing civil service framework, a preference eligible employee was entitled to appeal his separation if he was employed "in an Executive agency in the excepted service, and . . . [had] completed 1 year of current continuous service in the same or similar positions." 5 U.S.C. § 7511(a)(1)(B) (1990). The language of the original statute, which parallels that of 5 C.F.R. § 752.401(c)(5), did not require a preference eligible employee to perform the entirety of his most recent year of service in a single agency. See Shobe v. U.S. Postal Serv., 5 M.S.P.R. 466, 468 (1981); see also Lamb v. United States, 90 F. Supp. 369, 373 (Ct. Cl. 1950). Thus, neither the text nor the legislative history of section 7511(a)(1)(C)(ii) evinces any congressional intention to preclude an employee from satisfying the continuity-of-service requirement by tacking on prior service in a different agency.

In other cases, the Board has agreed with the position taken by Mr. Carrow that a nonpreference eligible in the excepted service may satisfy the two-year service requirement of section 7511(a)(1)(C)(ii) by combining periods of service with different agencies. See, e.g., Dade v. Dep't of Veterans Affairs, 101 M.S.P.R. 43, 47-48 (2005); Greene v. Def. Intelligence Agency, 100 M.S.P.R. 447, 450-51 (2005). In its brief in this case, the Board adheres to that position and does not defend the contrary position taken by the administrative judge. Based on OPM's regulations, we adopt that position and hold that Mr. Carrow was entitled to compute his two-year service period by adding periods of service in different Executive Branch agencies.

IV

The DVA and the Board argue that the Board's decision may be affirmed on yet another ground, namely that Mr. Carrow had not been employed for two years "under other than a temporary appointment limited to 2 years or less" as required by 5 U.S.C. § 7511(a)(1)(C)(ii). See generally Forest v. Merit Sys. Prot. Bd., 47 F.3d 409 (Fed. Cir. 1995); Antolin v. Dep't of Justice, 895 F.2d 1395 (Fed. Cir. 1989); Horner v. Lucas, 832 F.2d 596 (Fed. Cir. 1987); Stern v. Dep't of the Army, 699 F.2d 1312 (Fed. Cir. 1983); see also 58 Fed. Reg. 13191 (Mar. 10, 1993). Mr. Carrow responds by pointing out that there is no record evidence that the DVA advised him that his temporary appointment would be limited to less than two years. The surrender of his appeal rights was therefore involuntary, Mr. Carrow argues, because knowledge of the duration of his temporary appointment was crucial to understanding the consequences of accepting the orthotist-prosthetist position with the DVA.

The administrative judge did not address the question whether Mr. Carrow had served for at least two years "under other than a temporary appointment limited to 2 years or less." Moreover, the administrative judge did not make any specific findings as to whether Mr. Carrow was informed of the duration of his temporary appointment or whether knowledge of that fact would be material to Mr. Carrow's voluntary surrender of appellate rights. Because those questions are best addressed by the Board in the first instance, we elect not to try to resolve the case on that ground, but instead vacate the Board's decision and remand for the Board to address that issue and any other issue that may need to be addressed in order to resolve the case.

The court wishes to express its appreciation to Gene C. Schaerr, Esq., and Geoffrey P. Eaton, Esq., of the law firm of Winston & Strawn LLP, who undertook to represent Mr. Carrow on a pro bono basis at the invitation of the court and filed a brief on his behalf.

Costs to Mr. Carrow.

<u>VACATED and REMANDED.</u>