# United States Court of Appeals for the Federal Circuit

2008-5112

THEODORE FATHAUER, ROBIN FOX,
EDWARD K. HOGAN, JR., LAURIE R. NISBET,
and RICHARD THOMAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Richard J. Hirn, Attorney at Law, of Washington, DC, argued for plaintiffs-appellants.

Devin A. Wolak, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

2008-5112

THEODORE FATHAUER, ROBIN FOX,
EDWARD K. HOGAN, JR., LAURIE R. NISBET,
and RICHARD THOMAN,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 07-CV-279, Judge Lawrence M. Baskir.

_____

DECIDED: May 26, 2009

_____

Before MICHEL, Chief Judge, DYK and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST. Concurring opinion filed by Circuit Judge DYK.

PROST, Circuit Judge.

Part-time meteorologists Theodore Fathauer, Robin Fox, Edward Hogan, Jr., Laurie Nisbit, and Richard Thoman (collectively, "Appellants") appeal the United States Court of Federal Claims's decision denying their claims for Sunday premium pay under 5 U.S.C. § 5546(a). Because we conclude that the court erred by finding ambiguity in the word "employee," we vacate and remand.

## I. BACKGROUND

The facts in this case are undisputed. Each Appellant is employed by the

National Weather Service ("NWS") as a meteorologist. Under arrangements approved by the NWS, Appellants participate in a job-share program in which they share a single full-time position with one other person. Appellants work in NWS offices that are staffed seven days per week. Accordingly, the meteorologists, including both those who are full-time and those who participate in job-share arrangements, routinely work eight-hour shifts on Sundays. In accordance with the Sunday premium pay statute, 5 U.S.C. § 5546(a), and the corresponding Office of Personnel Management ("OPM") regulation, 5 C.F.R. § 550.171(a), NWS pays its full-time employees for their Sunday shifts at a premium rate of 125% of their regular pay. Part-time employees, including Appellants, do not receive premium pay for working on Sundays.

Appellants filed a complaint with the United States Court of Federal Claims on May 4, 2007, seeking Sunday premium pay. The court determined that the use of the word "employee" in 5 U.S.C. § 5546(a) does not answer the "precise question" of whether part-time employees are eligible. Therefore, it deferred to OPM's regulation, which restricts Sunday premium pay to full-time employees, and granted summary judgment in favor of the government. Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

This court reviews a grant of summary judgment by the United States Court of Federal Claims de novo. Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008). We review the court's conclusions of law, including its interpretations of statutes, without deference. W. Co. of N. Am. v. United States, 323 F.3d 1024, 1029 (Fed. Cir. 2003).

On review of an agency's interpretation of a statute it administers, the court must ask two questions. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843.

The Sunday premium pay statute, 5 U.S.C. § 5546(a), was originally enacted as § 405 of the Federal Salary and Fringe Benefits Act of 1966 ("FSFBA").[1] In its present form, it provides:

> An employee who performs work during a regularly scheduled 8-hour period of service which is not overtime work as defined by section 5542(a) of this title a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay.

---

[1] As originally enacted, the statute read:
Any regularly scheduled eight-hour period of service which is not overtime work as defined in section 201 of this Act any part of which is performed within the period commencing at midnight Saturday and ending at midnight Sunday shall be compensated for the entire period of service at the rate of basic compensation of the officer or employee performing such work plus premium compensation at a rate equal to 25 per centum of his rate of basic compensation.
Pub. L. No. 89-504, § 405(c), 80 Stat. 297-98 (1966). In 1967, § 5546(a) was amended to its present form. Pub. L. No. 90-83, 81 Stat. 201 (1967). The 1967 amendment was intended to make minor changes in phraseology and style, but was not intended to change the substance of the law. Federal Employees—Pay and Allowances, Etc., S. Rep. No. 90-482 (1967), as reprinted in 1967 U.S.C.C.A.N. 1538, 1541.

5 U.S.C. § 5546(a). Shortly after enactment, the Civil Service Commission ("CSC," the predecessor to OPM) proposed extending Sunday premium pay to part-time employees and requested comments from the Comptroller General. Although the Comptroller General recognized that the "literal language" of § 405 of the FSFBA "does not restrict the benefits in question to full-time employees," it expressed the opinion that the legislative history supports the view that "part-time employees are not entitled to premium pay for Sunday work." 46 Comp. Gen. 337 (Oct. 19, 1966). The Comptroller General relied in part on Senate Report No. 89-1187, which stated:

> Section 405 applies to classified and wage board employees a significant liberalization granted postal employees in 1965. This section requires a premium of 25 percent of base pay for any employees whose regularly scheduled 5-day workweek includes Sunday.

Federal Salary & Fringe Benefits Act of 1966, S. Rep. No. 89-1187 (1966), as reprinted in 1966 U.S.C.C.A.N. 2495, 2498.

In 1968, CSC promulgated a regulation providing that "[a]n employee is entitled to pay at his rate of basic pay plus premium pay at a rate equal to 25 percent of his rate of basic pay for each hour of Sunday work not in excess of 8 hours." Fathauer v. United States, 82 Fed. Cl. 509, 513 (2008). This regulation was codified at 5 C.F.R. § 550.171(a). Although the regulation did not distinguish between full-time and part-time employees on its face, CSC did not give Sunday premium pay to part-time employees. Fathauer, 82 Fed. Cl. at 514. Over the years, CSC occasionally received inquiries about why part-time employees were excluded, some of which were sent by members of Congress on behalf of their constituents. Id. Responses to several such inquiries are included in the record in this case, each of which explains that the exclusion of part-time employees was based on the Comptroller General's decision. Id.

In 1995, OPM amended § 550.171(a) to provide that "[a] <u>full-time</u> <u>employee</u> is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work." <u>Id.</u> (quoting 5 C.F.R. § 550.171(a) (emphasis added)).

In granting summary judgment in favor of the government in this case, the Court of Federal Claims deferred to OPM's regulation because, in the court's view, the use of the word "employee" in 5 U.S.C. § 5546(a) did not unambiguously include those who work part time. <u>Id.</u> at 516-17. The court found the statutory definition of "employee" set forth at 5 U.S.C. § 5541(2)(A)—"an employee in or under an Executive agency"— unhelpful because it is "circular" and "reveals nothing about the scope of the term." <u>Id.</u> at 516. Similarly, the court found that the Oxford English Dictionary definition, "[a] person employed for wages," "does little to clarify . . . whether the word 'employee' in everyday usage includes those working both full- and part-time." <u>Id.</u>

The court also rejected Appellants' argument that the reference to "employees" who work "full-time, part-time, and intermittent tours of duty" in 35 U.S.C. § 5542(a), which provides for overtime pay, demonstrates that part-time employees are encompassed within the statutory meaning of "employees." <u>Id.</u> Indeed, in the court's view, the history of § 5542(a) supports the proposition that "employee" is an ambiguous term that is subject to several possible interpretations. <u>Id.</u> at 516-17. The court noted that, as originally enacted, § 5542(a) provided overtime pay to "an employee" whose "[h]ours of work officially ordered or approved [were] in excess of 40 hours in an administrative workweek." <u>Id.</u> (quoting Pub. L. No. 89-554, 80 Stat. 485 (1966)). By its terms, this provision, like § 5546(a), applied to "employees." However, the same

Comptroller General opinion that recommended restricting Sunday premium pay to full-time employees stated that "the language [of § 5542(a)] does not restrict the benefits to full-time employees and we have found nothing in the legislative history of this or related statutes which would warrant a conclusion that such restriction was so intended." 46 Comp. Gen. at 340. Section 5542(a) was later amended to grant overtime pay to "an employee" whose "[h]ours of work officially ordered or approved [were] in excess of 40 hours in an administrative workweek, or [ ] in excess of 8 hours in a day." Fathauer, 82 Fed. Cl. at 517 (quoting Pub. L. No. 90-83, 81 Stat. 200 (1967)) (alterations in original). Under CSC's interpretation of this version of the statute, part-time and intermittent employees were paid at overtime rates if they worked more than eight hours in a day, but not if they worked more than forty hours in a week. Federal Employees—Overtime Pay, S. Rep. No. 92-530 (1971), as reprinted in 1971 U.S.C.C.A.N. 2147, 2148. In 1971, Congress added the "full-time, part-time, and intermittent tours of duty" language to § 5542(a) to "provide . . . specific authority" that overtime pay for hours in excess of forty per week was available to part-time and intermittent employees. Id. In light of this history, the Court of Federal Claims concluded that the word "employee" is ambiguous enough to allow different interpretations based on perceived congressional intent. Fathauer, 82 Fed. Cl. at 517.

We disagree with the court's conclusion that the word "employee" is ambiguous with respect to whether it encompasses those who work part time. Congress defined "employee" to include, among others, "an employee in or under an Executive agency." 5 U.S.C. § 5541(2)(A). While this definition is "circular" in the sense that it uses the defined word in the definition, we do not agree that it "reveals nothing about the scope

of the term." Fathauer, 82 Fed. Cl. at 516.  Rather, Congress's decision to use the word "employee" in the definition demonstrates that a special definition was unnecessary because the word was intended to be given its ordinary meaning.[2]

Dictionaries generally define "employees" as those who work for pay.  See, e.g., Oxford English Dictionary vol. 5 191 (2d ed. 1989) ("a person employed for wages"); The American Heritage Dictionary of the English Language 428 (1969) ("[a] person who works for another in return for financial or other compensation"); The Random House Dictionary of the English Language 468 (1967) ("a person working for another person or a business firm for pay"); Webster's Third New International Dictionary 743 (1968) ("one employed by another usu. in a position below the executive level and usu. for wages" or "any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker").  Appellants fall squarely within these definitions, which contain no suggestion that an individual's status as an "employee" is dependent on whether he works full time.

Moreover, the Supreme Court has on several occasions construed the word "employee" in the absence of a clear statutory definition.  In Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989) ("CCNV"), the Court addressed the meaning of "employee" within the context of the Copyright Act, which did not provide a definition. It stated:

> It is . . . well established that "[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must

---

[2]      We note that 5 U.S.C. § 2105(a) provides a definition of "employee" to be used throughout Title 5 "except as otherwise provided by [§ 2105] or when specifically modified."  The definition in § 2105(a), even if applicable here, also does not suggest that part-time employees are not "employees."

infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.

490 U.S. at 739-40 (citations omitted). After rejecting the parties' proposed tests for who is an "employee," the Court set forth its own approach:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52 (footnotes omitted). Although other considerations were relevant to the construction of "employee" in CCNV, the Court took the same approach in a later case, noting that reliance on the common law definition of "employee" was "the general rule." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (adopting the common law test for determining who qualifies as an "employee" under ERISA).

Thus, whether an individual is an "employee" under the Supreme Court's approach depends not on the number of hours worked per week, but on the level of control exercised by the hiring party. It cannot be disputed that Appellants are "employees" under the test articulated in CCNV.

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, this first canon is also the last: judicial

inquiry is complete." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461-62 (2002) (quotation marks omitted). In this case, Appellants are "employees" under the plain meaning of the word. That Congress expressly referred to "employees" who work "full-time, part-time and intermittent tours of duty" in the overtime pay provision, 35 U.S.C. § 5542(a), does not change the plain meaning of the word "employee." If anything, it supports our conclusion by indicating that part-time workers are a subset of a larger class of "employees." Because the word "employee" clearly includes those who work part time, we decline to sift through legislative history in search of ambiguity.

## III. CONCLUSION

Because the Court of Federal Claims erred by finding ambiguity in the word "employee," we vacate and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2008-5112

THEODORE FATHAUER, ROBIN FOX,
EDWARD K. HOGAN, JR., LAURIE R. NISBET,
and RICHARD THOMAN,

> Plaintiffs-Appellants,

v.

UNITED STATES,

> Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 07-CV-279, Judge Lawrence M. Baskir.

DYK, Circuit Judge, concurring.

I generally join the majority opinion, and agree that the word "employee" cannot reasonably be construed to mean "full-time employee." My only point of difference is that I think it is necessary to also address the "regularly scheduled" language in § 5546(a).[1] In my view, that language is ambiguous as to whether it refers only to full-time employees or also includes part-time employees. The word "regular" means "normal, standard, correct" in the sense of "undeviating in conformance to a standard set (as by convention, established authority, or a particular group)." Webster's Third New International Dictionary 1913 (Merriam-Webster 2002) (emphases added); see

---

[1] The current Sunday premium pay statute applies to "[a]n employee who performs work during a regularly scheduled 8-hour period of service" on a Sunday. 5 U.S.C. § 5546(a) (emphasis added). As originally enacted in 1966, the Sunday premium pay statute provided a premium for "[a]ny regularly scheduled eight-hour period of service" by an employee on a Sunday. Federal Salary and Fringe Benefits Act of 1966, Pub. L. No. 89-504, § 405(c), 80 Stat. 288, 297-98 (1966) (emphasis added).

also Webster's Unabridged Dictionary 1624 (Random House 2d ed. 1998) (defining "regular" as "usual; normal; customary" (emphases added)). The term "full-time" means "employed for or working the amount of time considered customary or standard," Webster's Third New International Dictionary at 919 (emphasis added), while the term "part-time" means "employed for or working less than the amount considered customary or standard," id. at 1648 (emphasis added). See also Webster's Unabridged Dictionary at 775 (defining "full-time" as "working or operating the customary number of hours in each day, week, or month" (emphasis added)); id. at 1415 (defining "part-time" as "employed to work, used, expected to function, etc., less than the usual or full time" (emphasis added)). This may suggest that a part-time employee is not "regularly scheduled" because he or she does not work a standard or customary 5-day schedule. However, while the dictionary definitions lend some support to the government's position, it is not entirely clear from the dictionary definitions that a "regular" schedule excludes a regular "part-time" schedule.

In my view the legislative history of § 5546(a), while also not conclusive, suggests that "regularly scheduled" in § 5546(a) refers only to full-time employees. The Senate Report accompanying the 1966 enactment of the Sunday premium pay statute explained:

> This section requires a premium of 25 percent of base pay for any employee whose regularly scheduled 5-day workweek includes Sunday. The premium will be paid for the entire 8-hour period of service regardless of the numbers of hours which actually occur on Sunday.

S. Rep. No. 89-1187, at 4 (1966), as reprinted in 1966 U.S.C.C.A.N. 2495, 2498 (emphases added). The government points out that this legislative history assumes that a regularly scheduled workweek is a "5-day" workweek.

2008-5112                                    2

Since, in my view, the statutory language and legislative history are not determinative, we would normally invoke Chevron deference.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).  While OPM has adopted regulations that bar part-time employees from receiving premium pay for Sunday work, those regulations attempt to reach that result by construing "employee" as restricted to full-time employees.[2]  The majority correctly points out that the term "employee" is not ambiguous in this respect, and thus not subject to Chevron deference.  One might have expected OPM instead to rest its Sunday pay regulation on the construction of the term "regularly scheduled," which, as noted above, is ambiguous.  But OPM chose not to do so, instead construing "regularly scheduled" to include both full-time and part-time employees.[3]  Under these circumstances, there is no agency construction of statutory language supporting the denial of premium pay to which we may afford Chevron deference.  To the contrary, the regulations define "regularly

---

[2]    OPM's regulations limit Sunday premium pay to full-time employees, stating that "[a] full-time employee is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to 25 percent of his or her rate of basic pay for each hour of Sunday work (as defined in § 550.103)."  5 C.F.R. § 550.171(a); see also Incentive Awards; Pay and Leave Administration, 60 Fed. Reg. 33,097 (Office of Pers. Mgmt. June 27, 1995).

[3]    OPM has defined "regularly scheduled administrative workweek" as encompassing both full-time and part-time employees.  As OPM's premium pay regulations state:

> Regularly scheduled administrative workweek, for a full-time employee, means the period within an administrative workweek, established in accordance with § 610.111 of this chapter, within which the employee is regularly scheduled to work. For a part-time employee, it means the officially prescribed days and hours within an administrative workweek during which the employee is regularly scheduled to work.

5 C.F.R. § 550.103 (emphases added).

scheduled" to include part-time employees, and we must defer to such an interpretation under <u>Chevron</u>.

In short, if OPM had adopted a regulation construing a "regularly scheduled" employee in § 5546(a) to mean only a full-time employee, it seems that this construction might pass muster under <u>Chevron</u>. Because OPM has defined "regularly scheduled" to apply to both part-time and full-time employees, there is no authoritative agency construction of the term "regularly scheduled" limiting § 5546(a) to full-time employees.