# United States Court of Appeals
# for the Federal Circuit

---

**MICHAEL YANKO, AS AN INDIVIDUAL, AND ON BEHALF OF ALL OTHER PART-TIME GS AND WG FEDERAL EMPLOYEES WHO ARE OR WERE EMPLOYED BY ALL FEDERAL AGENCIES AND WHO ARE SIMILARLY SITUATED,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1177

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01560-SGB, Chief Judge Susan G. Braden.

---

Decided: September 6, 2017

---

IRA M. LECHNER, Washington, DC, argued for plaintiff-appellant.

MARK E. PORADA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

Before PROST, *Chief Judge,* BRYSON and STOLL, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Plaintiff Michael Yanko is a part-time federal employee of the U.S. Department of Veterans Affairs. In his class action complaint, which he filed for himself and "on behalf of all other part-time GS and WG federal employees who are or were employed by all federal agencies and who are similarly situated," he asserts that the class members are entitled to premium pay for work performed on each day designated by statute or Executive Order as an "in-lieu-of" holiday. The Court of Federal Claims rejected his claim. We affirm.

## I

## A

There are ten federal holidays each year. Six of them are celebrated on Mondays, while the other four (New Year's Day, Independence Day, Thanksgiving Day, and Christmas Day) are celebrated on the day on which they fall.[1] Federal employees, including part-time employees, are paid for holidays that fall on a workday but on which the employee is not required to work. 5 C.F.R. §§ 610.405, 610.406. When employees are required to work on holidays, they are entitled to premium pay for their work on that day that is not in excess of eight hours and is not overtime work. 5 U.S.C. § 5546(b). The rate of premium pay for holiday work is equal to the employee's rate of basic pay, *id.,* which means that an employee who works

---

[1] For employees in the District of Columbia and certain nearby areas, Inauguration Day is also recognized as a federal holiday. 5 U.S.C. § 6103(c).

on a holiday is in effect paid double time for that work. Both full-time and part-time employees are entitled to premium pay for designated holidays on which they are required to work.  5 C.F.R. § 610.202(a).

In addition to holidays that fall on employees' workdays, holidays sometimes fall on days that particular employees are not scheduled to work.  By statute and Executive Order, certain employees whose basic workweek of five workdays is Monday through Friday are granted days off "in-lieu-of" holidays for those days.  In the case of a holiday that falls on a Saturday, Congress has provided that the Friday before that Saturday is a holiday.  5 U.S.C. § 6103(b)(1)(A).  In the case of a holiday that falls on a Sunday, an Executive Order provides that the Monday after that Sunday is a holiday for those employees.  Exec. Order No. 11,582, § 3(a), 36 Fed. Reg. 2957 (Feb. 11, 1971).  Such Friday and Monday holidays are referred to as "in-lieu-of holidays."  Employees who are entitled to such in-lieu-of holidays are relieved from having to work on those days or, if required to work, earn premium pay for those days.   5 U.S.C. § 6103(b)(1)(A); Exec. Order No. 11,582, § 3(a).

Employees whose basic workweek of five workdays is other than Monday through Friday enjoy corresponding benefits.  For such employees, if a holiday falls on a day outside the employee's basic workweek, the employee's in-lieu-of holiday is observed during the employee's workweek, on either the day before or the day after the actual holiday.  5 U.S.C. § 6103(b)(2); Exec. Order No. 11,582, § 3(b).[2]  The employees are relieved from work on that in-

---

[2]   The statute and Executive Order use somewhat convoluted language, but the upshot is that a holiday that falls on the day that is treated as the employee's Saturday is observed as an in-lieu-of holiday on the last workday before that day, and a holiday that falls on the day that is

lieu-of day or given premium pay if they are required to work. *See* 5 U.S.C. § 6103(b)(2); Exec. Order No. 11,582, § 3(b).

There is no dispute between the parties regarding how the in-lieu-of provisions operate with regard to full-time employees. The dispute concerns whether, and to what extent, the in-lieu-of provisions apply to part-time employees such as Mr. Yanko.

## B

Mr. Yanko has been employed by the Department of Veterans Affairs on a part-time basis for some time, including the entire six-year period prior to the filing of his complaint. His regular workweek consists of five days, from Sunday through Thursday. Thus, his weekly non-workdays regularly fall on Fridays and Saturdays. Between December 15, 2009, and May 16, 2016, there were eight official public holidays that fell on either a Friday or a Saturday (New Year's Day of 2010, 2011, and 2016; Independence Day of 2014 and 2015; and Christmas Day of 2009, 2010, and 2015). Because Mr. Yanko is a part-time employee, he was not credited with an in-lieu-of

---

treated as the employee's Sunday is observed as an in-lieu-of holiday on the next workday after that day. For example, a full-time employee may work Wednesday through Sunday, with Monday off in place of Saturday, and Tuesday off in place of Sunday. For such an employee, if a holiday falls on the non-workday in place of Saturday (Monday, in the example), the employee's immediately preceding workday (Sunday) is treated as an in-lieu-of holiday. *See* 5 U.S.C. § 6103(b)(2). If a holiday falls on the employee's non-workday in place of Sunday (Tuesday, in the example), the employee's immediately following workday (Wednesday) is treated as an in-lieu-of holiday. *See* Exec. Order No. 11,582, § 3(b).

holiday during the preceding or succeeding workweek for any of those eight days.

It is the longstanding policy of the Office of Personnel Management ("OPM") that part-time employees are not entitled to an in-lieu-of holiday corresponding to a particular holiday when that holiday falls on a non-workday for the part-time employee. That policy is reflected in regulations issued by OPM pursuant to notice-and-comment rulemaking. 5 C.F.R. §§ 610.405, 610.406. Contending that OPM's policy and regulations are contrary to section 6103(b) and Executive Order 11,582, Mr. Yanko seeks to recover an amount equal to the premium pay to which he would have been entitled if he had been credited with in-lieu-of holidays for the eight holidays that fell outside his normal workweek during the past six years.

The Court of Federal Claims disagreed with Mr. Yanko's statutory argument. Instead, the court held that the governing statute and Executive Order do not provide part-time employees such as Mr. Yanko with a right to in-lieu-of holidays when federal holidays fall on days outside the employees' normal workweek. In particular, the court concluded that the term "basic workweek," which appears in the statute governing in-lieu-of holidays and in Executive Order No. 11,582, refers only to full-time employees, and not to part-time employees. On appeal, Mr. Yanko challenges that construction of the statute and the Executive Order.

## II

### A

To begin with, Mr. Yanko objects to the trial court's dismissal of his complaint for failure to state a claim on which relief can be granted. He argues that he has made factual allegations that preclude the entry of judgment against him as a matter of law. In fact, however, the trial court correctly found that this case turns not on a factual

dispute, but on a pure legal issue of statutory interpretation: whether part-time federal employees are entitled to in-lieu-of holidays when federal holidays fall on days on which they are not scheduled to work. For that reason, the court properly resolved this case on legal grounds under Rule 12(b)(6) of the Rules of the Court of Federal Claims. *See Amoco Oil Co. v. United States*, 234 F.3d 1374, 1377 (Fed. Cir. 2000).

B

On the merits, Mr. Yanko argues that section 6103(b) of title 5 and Executive Order No. 11,582, which provide for in-lieu-of holidays, apply by their terms to part-time employees. For that reason, he argues, OPM's regulations and its longstanding practice of excluding part-time employees from the in-lieu-of holiday benefits of section 6103(b) and the Executive Order, are invalid.

Mr. Yanko's statutory argument proceeds from his contention that part-time employees are "employees" within the meaning of the pertinent statutes, and that once that proposition is accepted, the in-lieu-of holiday provisions of section 6103(b) and the Executive Order necessarily apply with full force to part-time employees. While we agree that part-time employees are "employees" as that term is used in the pertinent provisions, *see Fathauer v. United States*, 566 F.3d 1352, 1356-57 (Fed. Cir. 2009), that point does not carry the day for Mr. Yanko.[3]

---

[3]    Mr. Yanko places heavy reliance on this court's decision in *Fathauer*. That case, however, merely held that the term "employee" in the Sunday premium pay statute, 5 U.S.C. § 5546(a), comprises both part-time and full-time employees. 566 F.3d at 1356. The issue in this case is quite different—whether the statutory term "basic

Under both section 6103(b) and section 3 of Executive Order No. 11,582, in-lieu-of holiday benefits are limited to employees who work a "basic workweek," whether that constitutes Monday through Friday or some period other than Monday through Friday. Referencing 5 U.S.C. § 6101, the government argues that the term "basic workweek" refers to the basic 40-hour workweek worked by full-time employees.

Section 6101 directs each executive agency to "establish a basic administrative workweek of 40 hours for each full-time employee." 5 U.S.C. § 6101(a)(2)(A). The statute also provides that "the basic 40-hour workweek is scheduled on 5 days, Monday through Friday when possible, and the 2 days outside the basic workweek are consecutive." *Id.* § 6101(a)(3)(B). The government argues that the term "basic workweek," as used in section 6101(a)(3)(B) and elsewhere in sections 6101 and 6103, is simply shorthand for "basic 40-hour workweek" or "basic administrative workweek of 40 hours," as used in section 6101. Accordingly, the government asserts, the use of the shorthand term "basic workweek" in section 6103(b) and in the corresponding portion of Executive Order No. 11,582 necessarily limits the scope of those provisions to employees who work a 40-hour week, i.e., full-time employees. *Cf.* 5 U.S.C. § 3401(2) (part-time employees work between 16 and 32 hours per week, or between 32 and 64 hours during a biweekly pay period).

Mr. Yanko disagrees, arguing that when Congress intended to refer to the "basic workweek" of full-time employees, it used the term "basic 40-hour workweek" or "basic administrative workweek of 40 hours," and that when it used the unmodified term "basic workweek," it intended the provisions in question to apply to both full-

workweek" in 5 U.S.C. § 6103(b) refers to the workweek of all federal employees or only full-time employees.

time and part-time employees.  For that reason, he con-
tends that "there is no ambiguity" and that the in-lieu-of
holiday provisions in section 6103(b) and the Executive
Order clearly apply to part-time employees.  Appellant's
Br. at 33.[4]

While the text of section 6103 and the Executive
Order does not explicitly answer the question, an exami-
nation of the history of those provisions and the way they
have been interpreted over the past 70 years persuades us
to reject Mr. Yanko's contention that the provisions
unambiguously support his position that in-lieu-of holiday
benefits are available to part-time workers.

1

The statutory provisions at issue in this case trace
their origins to the Federal Employees Pay Act of 1945,
Pub. L. No. 79-106, 59 Stat. 295 ("the 1945 Pay Act").
Section 604 of that Act, entitled "Establishment of Basic
Workweek; Pay Computation Methods," contained the
core provisions governing the establishment of "a basic
administrative workweek of forty hours" for full-time
federal employees.  59 Stat. at 303.  That section was the
precursor of the current section 6101.

Seven years after the enactment of the 1945 Pay Act,
President Truman issued an Executive Order that provid-
ed for in-lieu-of holidays for federal employees for the first
time.  *See* Exec. Order No. 10,358, 17 Fed. Reg. 5269

---

[4]    Executive Order No. 11,582 uses the term "basic
workweek" without further defining it.  However, neither
party in this case has suggested that the term "basic
workweek" should be construed differently for the Execu-
tive Order than for section 6103(b).  We agree that there
is no textual or contextual basis for drawing a distinction
between the two and we therefore treat them as being *in
pari materia.*

(June 9, 1952). That Executive Order provided that when a holiday fell on a Sunday, an employee "whose basic workweek does not include Sunday" would be excused from work on the next workday of the employee's basic workweek. In the case of an employee "whose basic workweek includes Sunday," the Executive Order provided that when a holiday fell on a day that had been administratively scheduled as the employee's regular non-workday in lieu of Sunday, the employee would be excused from work on the next workday of his basic workweek. Finally, the Executive Order provided that when a holiday such as Labor Day or Thanksgiving Day (which always occur on a specific day of the week) fell on a day outside a particular employee's regular basic workweek, the employee would be "excused from work on the next workday of his basic workweek." The Executive Order made no equivalent provision for holidays falling on a Saturday. The Executive Order also made no explicit reference to whether those rules would apply to part-time employees.

The question whether the Executive Order extended to part-time employees did not remain unresolved for long, however. An opinion was promptly sought from the Comptroller General as to whether Executive Order No. 10,358 applied to part-time employees. In a decision issued in early 1953, the Comptroller General ruled that it did not. The Comptroller General determined that the holiday benefit provisions of the Executive Order "are for application only to employees who have a regularly established basic workweek of at least 40 hours and do not apply to part-time employees." *Acting Comptroller Gen. Yates to the Adm'r of Veterans Affairs*, 32 Comp. Gen. 378, 378 (1953).

The Comptroller General concluded that the term "basic workweek," as used in the Executive Order, should be construed "accord[ing to] the commonly understood meaning of said term[,] as employed in the [1945] Pay Act

and applicable civil service regulations," to "relat[e] only to employees who have a regularly established workweek of at least 40 hours." *Id.* at 380.

Six years later, Congress amended the 1945 Pay Act by adding a provision that extended the in-lieu-of holiday rule to Saturdays. The amendment provided that when a holiday fell on a Saturday, the day immediately preceding the Saturday would be recognized as a legal public holiday. Pub. L. No. 86-362, 73 Stat. 643 (1959). In addition, Congress added a provision that is essentially the same as the provision now found in 5 U.S.C. § 6103(b)(2). It stated that if a holiday fell on a regular non-workday for an employee whose basic workweek was other than Monday through Friday, and that day was not the non-workday scheduled for the employee in lieu of Sunday, the workday immediately preceding that non-workday would be treated as a holiday for that employee. *Id.* Other than changes in language and organization made as part of a recodification of title 5 in 1966, Congress has left the substance of the in-lieu-of holiday rules unaltered since the legislation in 1959.

In 1971, President Nixon issued Executive Order No. 11,582, which replaced Executive Order No. 10,358. As relevant here, the 1971 order preserved the portions of Executive Order No. 10,358 relating to employees with regularly scheduled workweeks whose basic workweeks did not include Sundays, *see* Exec. Order No. 11,582, § 3(a), as well as those employees whose basic workweeks included Sundays, *id.* § 3(b).

Nothing in the history of the in-lieu-of holiday provisions lends any support to Mr. Yanko's argument that either Congress or the President clearly intended those provisions to apply to part-time employees. Nothing in the statute or the Executive Order suggests that the term "basic workweek" applies to part-time employees. Instead, from as early as the 1945 Pay Act, the term was

consistently used in reference to full-time employees. Reading section 6101, section 6103, and Executive Order No. 11,582 as a whole, it is reasonable to interpret the use of the term "basic workweek" to be a shorthand expression for "basic 40-hour workweek," as used in both the text and the heading of section 6101. *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[A] subchapter heading cannot substitute for the operative text of a statute," but "statutory titles and section headings are tools available for the resolution of doubt about the meaning of a statute.") (internal quotation marks omitted). We therefore reject Mr. Yanko's argument that the text of the statute by itself makes clear that the "in-lieu-of" holiday rules apply to part-time employees.

2

There are only two possible plain meaning constructions of "basic workweek," as used in section 6103 and the Executive Order: (1) "basic workweek" refers to the 40-hour workweek of a full-time employee, or (2) "basic workweek" includes the schedules of part-time employees. We have rejected Mr. Yanko's argument that the latter is an unambiguous, plain meaning interpretation. Although the government argues the former, i.e., that the text of the statute and the Executive Order unambiguously supports its position, we find it unnecessary to decide that question, because the consistent administrative interpretation of the statute and the Executive Order by OPM— the agency charged by Congress with administering the federal personnel laws—supports the government's interpretation. Applying familiar principles of deference to agency interpretations of ambiguous statutes, *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), we hold that, even assuming the language of section 6103 and Executive Order No. 11,582 does not plainly support the government's interpretation,

OPM's interpretation of the statute and Executive Order is entitled to deference and thus governs this case.

When a statute is ambiguous or silent with respect to an issue of statutory construction, the Supreme Court has held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress has delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead*, 533 U.S. 218, 226-27 (2001). Delegation of such authority can be shown, for example, by an agency's power to engage in notice-and-comment rulemaking. *Id.* at 227; *see also In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015); *Mercier v. United States*, 786 F.3d 971, 977-78 (Fed. Cir. 2015); *Wilder v. Merit Sys. Prot. Bd.*, 675 F.3d 1319, 1322 (Fed. Cir. 2012); *Carrow v. Merit Sys. Prot. Bd.*, 564 F.3d 1359, 1365 (Fed. Cir. 2009). Applying those principles, we hold that OPM's interpretation of the in-lieu-of holiday provisions of section 6103(b) as inapplicable to part-time employees is entitled to deference.

In 5 U.S.C. § 6101(c), Congress granted OPM the authority to "prescribe regulations, subject to the approval of the President, necessary for the administration of this section insofar as this section affects employees in or under an Executive agency." By Executive Order, the President has designated and empowered OPM to exercise, "without the approval, ratification, or other action of the President," the authority to issue regulations necessary for the administration of the 1945 Pay Act (of which current section 6101 was a part). Exec. Order No. 10,552 (Aug. 10, 1954), *as modified by* Exec. Order No. 12,107 (Dec. 28, 1978). Thus, in this case there is a clear authorization, both from Congress and the President, for OPM to engage in formal rulemaking, authority that the Supreme

Court has described as "a very good indicator of delegation meriting *Chevron* treatment." *Mead*, 533 U.S. at 229.

Pursuant to that authority, OPM has promulgated regulations that specifically provide that "[w]hen a holiday falls on a non-workday of a part-time employee, he or she is not entitled to an in-lieu-of day for that holiday." 5 C.F.R. §§ 610.405, 610.406.[5] OPM has consistently taken that position since the regulations were promulgated in 1983, and the rule has been consistently applied in that manner since much earlier. *See Barnhart v. Walton*, 535 U.S. 212, 220-21 (2002) (noting that the "Agency's interpretation is one of long standing" and according *Chevron* deference in light of, *inter alia*, "the careful consideration the Agency has given the question over a long period of time"); *Butterbaugh v. Dep't of Justice*, 336 F.3d 1332, 1341 (Fed. Cir. 2003) (extra deference due to agency's longstanding interpretations of statutory prescriptions).

Similar principles apply to interpretations of Executive Orders by the agency charged with administering them. *See Udall v. Tallman*, 380 U.S. 1, 16-18 (1965). This court has applied that principle to cases in which OPM has interpreted Executive Orders or other Presidential directives governing personnel matters in which, as in this case, OPM has been charged with the responsibility to apply and administer the Executive Order or directive.

---

[5] Although the two cited regulations apply specifically to part-time employees on flexible or compressed work schedules, OPM made clear in comments accompanying the promulgation of those regulations that it interprets in-lieu-of holiday benefits as inapplicable to part-time employees generally and that the specific regulations were based on that general principle. *See Hours of Duty; Alternative Work Schedules*, 48 Fed. Reg. 44,059, 44,059 (Office Pers. Mgmt. Sept. 27, 1983) ("A part-time employee is not entitled to in-lieu-of holidays.").

In such cases, we have held that the court must accord broad deference to the agency's interpretation of the Executive Order. *See Wagner v. Office of Pers. Mgmt.*, 783 F.2d 1042, 1045 (Fed. Cir. 1986); *Alaniz v. Office of Pers. Mgmt.*, 728 F.2d 1460, 1465 (Fed. Cir. 1984); *see also Montana Wilderness Ass'n v. Connell*, 725 F.3d 988, 994 (9th Cir. 2013); *El-Ganayni v. U.S. Dep't of Energy*, 591 F.3d 176, 187 (3d Cir. 2010); *Dehainaut v. Peña*, 32 F.3d 1066, 1073 (7th Cir. 1994).

Further support for the government's interpretation of the in-lieu-of holiday provisions comes from the longstanding and consistent line of authority from the Comptroller General holding that the in-lieu-of holiday provisions do not apply to part-time employees. That line of authority began with the 1953 Comptroller General opinion discussed above, which issued shortly after the promulgation of the first Executive Order granting in-lieu-of holiday benefits. *See Acting Comptroller Gen. Yates to the Adm'r of Veterans Affairs*, 32 Comp. Gen. 378 (1953). As shown in a series of subsequent opinions, the Comptroller General has adhered to that position ever since: *Matter of Commissary Employees—Entitlement to Holiday*, B-192104, 1978 WL 11300 (Comp. Gen. Sept. 1, 1978); *Matter of Gladys Noon Spellman, House of Representatives*, B-198472, 1980 WL 16572 (Comp. Gen. May 21, 1980); *Matter of Shirley A. Lombardo—Part-Time Employee's Entitlement to Holiday*, 63 Comp. Gen. 306 (1984); *Matter of Part-time Employees*, B-214156, 1984 WL 44280 (Comp. Gen. May 29, 1984). While opinions of the Comptroller General are not binding on this court, we have looked to them for guidance in areas in which the Comptroller General has been assigned legal responsibilities, *see Cleveland Telecomms. Corp. v. Goldin*, 43 F.3d 655, 658 n.1 (Fed. Cir. 1994), as was formerly the case with regard to the resolution of federal employees' claims as to compensation and leave, *see Adams v. Hinchman*, 154 F.3d 420, 422 n.2 (D.C. Cir. 1998).

The reasonableness of OPM's position is buttressed by the point made in one of the Comptroller General's opinions from 1984. In that opinion, the Comptroller General pointed out that interpreting the in-lieu-of holiday rule to apply to part-time employees would mean that part-time employees working fewer than five days per week would obtain disproportionately favorable in-lieu-of holiday benefits compared to their full-time colleagues; as the opinion noted, "the smaller the number of regularly scheduled workdays [for such an employee], the greater the proportional entitlement to designated or in lieu of holidays." *Matter of Shirley A. Lombardo*, 63 Comp. Gen. at 307. It is not unreasonable for OPM to conclude that Congress would not have intended to implement a system having such a perverse outcome.

In sum, we hold that it was reasonable for OPM, in its formal regulations, to interpret the reference to "basic workweek" as applying only to full-time employees. That position is consistent with the position taken by the Comptroller General in interpreting the statute, and it is consistent with the position taken by OPM since OPM first issued regulations on the issue. Because the language and context of the statute do not clearly indicate that Congress or the President intended a contrary interpretation of the term "basic workweek," we sustain OPM's interpretation of that term as applicable only to full-time employees.

Each party shall bear its own costs for this appeal.

**AFFIRMED**